**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-00877-CMA

RONALD DURAN,

      Applicant,

v.

JOHN DAVIS, and
JOHN SUTHERS, Attorney General of the State of Colorado,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on the amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 9) ("the Application"), filed *pro se* by Applicant, Ronald Duran.  Respondents have filed an Answer to Habeas Application (Doc. # 29) ("the Answer"), and Mr. Duran has filed Applicant's Reply to Attorney General Answer (Doc. # 31) ("the Traverse").  After reviewing the record, including the Application, the Answer, the Traverse, and the state court record, the Court concludes that the Application should be denied and the case dismissed with prejudice.

## I. <u>BACKGROUND</u>

Mr. Duran is a prisoner in the custody of the Colorado Department of Corrections at the Sterling Correctional Facility in Sterling, Colorado.  He is challenging the validity of his conviction and sentence for robbery and third degree assault in Adams County District Court case number 05CR3013.

At trial, undisputed evidence presented to the jury revealed that Mr. Duran and the victim knew each other and attended two parties together one evening; that Mr. Duran, the victim, and an unidentified man went to an apartment complex after leaving the second party; that the victim was assaulted at the apartment complex; that two men were present while the victim was assaulted; and that the victim's photo identification card was found during a search of Mr. Duran's bathroom in a house he shared with his mother.  Witnesses provided varying descriptions of the clothing worn by the two men present when the victim was assaulted, but the victim testified that she was assaulted by Mr. Duran.  Mr. Duran's defense was that he was only a bystander while the unidentified man assaulted the victim and Mr. Duran's mother testified that the victim's photo identification card was present in Mr. Duran's bathroom before the assault occurred.  At the conclusion of the trial, Mr. Duran was convicted of robbery and  third degree assault.

After Mr. Duran was adjudicated to be an habitual criminal in a separate proceeding, he was sentenced to twenty-four years in prison.  The Colorado Court of Appeals affirmed the judgment of conviction on direct appeal.  *See People v. Duran*, No. 07CA1744 (Colo. App. Apr. 30, 2009) (unpublished) (Doc. # 16-13.)  On July 20, 2009, the Colorado Supreme Court denied Mr. Duran's petition for writ of certiorari on direct appeal.  (*See* Doc. # 16-11.)  Mr. Duran also pursued postconviction relief in the state courts, but the state court postconviction proceedings are not relevant to the Court's consideration of Mr. Duran's remaining claims.

2

Mr. Duran asserts four numbered claims for relief in the Application, each of which has various subparts.  The Court previously entered an Order to Dismiss in Part (Doc. # 28), in which claims 1 and 4 and a portion of claim 3 were dismissed as unexhausted and procedurally barred.  As a result, only claim 2 and a portion of claim 3 remain pending before the Court.  Respondents concede that the remaining claims are timely and the Court has determined they are exhausted.

Mr. Duran contends in claim 2 that his Sixth and Fourteenth Amendment rights were violated during the course of jury selection.  He alleges in the Application in support of claim 2 that the prosecution improperly was allowed two extra peremptory challenges; two jurors ("S" and "W") were dismissed for cause without an opportunity for questioning by the defense; and he was forced to use a peremptory challenge to remove a juror ("R") after the trial court improperly denied a defense challenge for cause.  (*See* Doc. # 9 at 7.)  It is apparent that the first two subparts of claim 2 are related because Mr. Duran argued on direct appeal that dismissing jurors S and W for cause without allowing defense counsel to question those jurors resulted in the prosecution being afforded two extra peremptory challenges.  (*See* Doc. # 16-16 at 14-22.)  The Court will refer to these related subparts of claim 2 as claim 2(a).  The Court will refer to the other subpart of claim 2, in which Mr. Duran contends he was forced to use a peremptory challenge to remove juror R, as claim 2(b).

Mr. Duran alleges in the Application in support of claim 3 that his Sixth and Fourteenth Amendment rights were violated as a result of judicial bias.  In the Court's

Order to Dismiss in Part, the Court construed claim 3 liberally as asserting a violation of Mr. Duran's constitutional right to compulsory process and to present a defense premised on the trial judge's failure to grant a motion for a mistrial or alternatively consider a request for admission of statements under the residual hearsay exception. Mr. Duran alleges in support of this liberally construed claim that a defense witness, Nikkole[1] King, failed to appear at trial, that the trial court denied a defense motion for a mistrial based on Ms. King's failure to appear, and that the trial court denied a defense motion to introduce Ms. King's statements through a law enforcement officer pursuant to the residual hearsay exception. (*See* Doc. # 31 at 2.)  So construed, the Court found that this portion of claim 3 is exhausted.

## II.  STANDARD OF REVIEW

The Court must construe the Application and the Traverse liberally because Mr. Duran is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

---

[1]      Ms. King's first name is spelled differently in various documents and transcripts in the state court record and the Court's file, but there is no question that the various spellings refer to the same person.

> (1)  resulted in a decision that was contrary to, or involved an unreason-able application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determi-nation of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Duran bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The Court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003).  The threshold question the Court must answer under § 2254(d)(1) is whether

Mr. Duran seeks to apply a rule of law that was clearly established by the Supreme

Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390

(2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta,

of [the Supreme] Court's decisions as of the time of the relevant state-court decision."

*Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id*. at

1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable requires
> considering the rule's specificity.  The more general the rule, the more
> leeway courts have in reaching outcomes in case-by-case determinations.
> [I]t is not an unreasonable application of clearly established Federal law
> for a state court to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (internal quotation marks omitted).

In conducting this analysis, the Court "must determine what arguments or theories

supported or . . . could have supported[] the state court's decision" and then "ask

whether it is possible fairminded jurists could disagree that those arguments or theories

are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id.*  In

addition, "review under § 2254(d)(1) is limited to the record that was before the state

court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S. Ct. 1388,

1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was
> an error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 131 S. Ct. 786-87.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C.

§ 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).

Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Duran bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III.  MERITS OF APPLICANT'S REMAINING CLAIMS

## A.    CLAIM 2

As set forth above, Mr. Duran contends in claim 2 that his Sixth and Fourteenth Amendment rights were violated because of improper jury selection.  In particular, he alleges in claim 2(a) that dismissing jurors S and W for cause without allowing defense counsel to question those jurors resulted in the prosecution being afforded two extra peremptory challenges and he alleges in claim 2(b) that he was forced to use a peremptory challenge to remove juror R after the trial court improperly denied a defense challenge for cause.

8

Respondents argue that claims 2(a) and 2(b) must be dismissed because neither claim states a federal constitutional claim cognizable in a habeas corpus action. With respect to claim 2(a), Respondents maintain that there is no federal constitutional right to the use of peremptory challenges to achieve the constitutional requirement of an impartial jury. With respect to claim 2(b), Respondents maintain that the use of a peremptory challenge to remove an allegedly biased juror also does not implicate a federal constitutional right. The Court agrees that claims 2(a) and 2(b) do not state cognizable constitutional claims and must be dismissed.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant the right to an impartial jury. *See Ross v. Oklahoma*, 487 U.S. 81, 85 (1988); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). If a "juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," he should be dismissed for cause. *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (internal quotation marks omitted); *see also United States v. Scull*, 321 F.3d 1270, 1278 (10th Cir. 2003). However, in deciding whether the jury was impartial, the Court must focus on the jurors who ultimately deliberated and decided Mr. Duran's fate. *See Ross*, 487 U.S. at 86.

Mr. Duran does not argue in either claim 2(a) or claim 2(b) that any of the jurors who actually determined his guilt were biased or impartial. Instead, claims 2(a) and 2(b) both relate to alleged errors that resulted in the dismissal of prospective jurors during voir dire.

Mr. Duran asserts in claim 2(a) that he was denied the opportunity to rehabilitate jurors S and W, who were dismissed for cause at the request of the prosecution, and that the absence of an opportunity to rehabilitate jurors S and W effectively allowed the prosecution to exercise two additional peremptory challenges.  Although Mr. Duran asserts in the Traverse that the prosecution's challenges for cause with respect to jurors S and W were granted after the prosecution exercised all of their peremptory challenges, the state court record demonstrates that jurors S and W were dismissed prior to either party exercising any peremptory challenges.  (*See* State Court R., Trial Tr. 5/14/07 at pp.98-99, 123.)  In any event, the timing of the challenges is not pertinent to the Court's analysis below.

The Court finds that claim 2(a) lacks merit because Mr. Duran fails to demon-strate that the allegedly improper dismissal of jurors S and W resulted in a jury that was either unfair or impartial.  *See Jones v. Dretke*, 375 F.3d 352, 355-56 (5th Cir. 2004) (noting that outside the capital context, there is no federal constitutional violation in erroneous grant of a prosecution challenge for cause).  Simply put, Mr. Duran does not identify any federal constitutional right to rehabilitate jurors challenged for cause by the prosecution in this context.  Although the Supreme Court "has recognized a defendant's constitutional right to voir dire questioning . . . about whether jurors might be prejudiced against a defendant because of his race," *see Kater v. Maloney*, 459 F.3d 56, 66 (1st Cir. 2006) (*citing Ham v. South Carolina*, 409 U.S. 524, 526-27 (1973), and *Aldridge v. United States*, 283 U.S. 308, 314-15 (1931)), Mr. Duran does not contend

10

that the denial of his opportunity to rehabilitate jurors S and W had anything to do with determining their potential racial bias.  Furthermore, to the extent claim 2(a) may be construed as asserting an argument that Mr. Duran effectively was denied an equal number of peremptory challenges, the Court notes that "there is no free-standing constitutional right to peremptory challenges."  *Rivera v. Illinois*, 556 U.S. 148, 157 (2009).  Therefore, the Court finds that claim 2(a) does not raise a cognizable federal constitutional issue.

The Court also finds that Mr. Duran is not entitled to relief with respect to claim 2(b).  Mr. Duran concedes, and the state court record confirms, that he used a peremptory challenge to excuse the allegedly biased juror R after the trial court denied the defense challenge for cause.  (*See* State Court R., Trial Tr. 5/14/07 at p.127.)  Thus, Mr. Duran cured any constitutional error that may have occurred when the trial court refused to remove juror R for cause.  *See Ross*, 487 U.S. at 88.  The fact that Mr. Duran was required to use a peremptory challenge to achieve the goal of an impartial jury is not sufficient to demonstrate a constitutional violation.  *See id.*

**B.    CLAIM 3**

As discussed above, the Court has construed claim 3 liberally as asserting a violation of Mr. Duran's constitutional right to compulsory process and to present a defense premised on the trial judge's failure to grant a motion for a mistrial or alternatively to consider a request for admission of statements under the residual hearsay exception.  *See, e.g., Richmond v. Embry*, 122 F.3d 866, 871 (10th Cir. 1997)

(explaining that the right to present defense-witness testimony arises under the Fifth

and Fourteenth Amendment right to due process and the Sixth Amendment right to

compulsory process).  On direct appeal, the Colorado Court of Appeals recounted

the proceedings in the trial court pertinent to this claim as follows:

> Here, on the first day of trial, defense counsel advised the court:
>
>> [Ms. King] is a witness we have under subpoena, we had her under subpoena last time this trial was going to start, and it didn't start because Mr. Duran wasn't here, but [Ms. King] was not here either.  I asked the Court to issue a contempt citation or an arrest warrant for her, she was arrested, she was held in custody, we reserved her, and I don't believe she is here now . . . .  I don't feel comfortable saying I'm ready to proceed when she's not here because she is a necessary witness.  I'm just not comfortable with that because of her past failure to appear . . . .
>
>> The trial court declined to address the issue at that time because [Ms. King] was not scheduled to be called until the following day.  However, the trial court issued a bench warrant for [Ms. King].
>
>> At the conclusion of the prosecution's case, defense counsel moved for a mistrial because [Ms. King] still had not appeared.  The trial court asked defense counsel how [Ms. King's] testimony was material to the defense, because an officer had already testified that [Ms. King] had not been able to identify Duran in a photo array and Duran did not deny being present when [the victim] was attacked.
>
>> Defense counsel then provided the following offer of proof:
>
> [Ms. King] will say one man was standing, not doing anything, and the other man was beating – basically beating up [the victim]. . . .  Her description to – her description that she wrote, her specific statement, she wrote that there were two men, that the first man was stocky build, 5'6" or 5'7", medium complexion, had a black baseball cap, black cut off shirt, and dark blue jeans.  The second guy standing at the end of the complex was Hispanic, he had a lighter complexion, he had a white cutoff shirt and light

> blue jean shorts . . . .  [A]lso the court has heard [the victim] denied bringing a bottle of liquor [or] an alcoholic drink with her to the front porch when she went to knock on Building No. 4.  [Ms. King] will testify she saw a bottle of liquor that was there that wasn't there previously.

> The trial court denied the mistrial motion and made extensive findings of fact, including the following:

> I find, under the totality of the circumstances, the failure to appear wasn't the result of state involvement, [and Ms. King] is not a person specifically identifying the defendant as the person who was not assaulting [the victim].  [Ms. King] provides evidence of somewhat inconsistent clothing, she has some impeachment evidence, but the defense did nothing to preserve her testimony so that they have that at a trial.

> The trial court then adjourned the trial until the following day so that defense counsel could continue her efforts to contact [Ms. King].  The next morning defense counsel advised the court that she had not been able to contact or find [Ms. King] and renewed her motion for a mistrial, which the trial court denied.

(Doc # 16-13 at 13-15.)

As an initial matter, the Court notes that, in reviewing Mr. Duran's claim that his constitutional right to present a defense was violated, the Court is not reviewing whether the trial court properly denied Mr. Duran's motions for a mistrial as a matter of state law or whether the trial court properly applied Colorado's residual hearsay exception to exclude the evidence in question.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States").  Instead, the question before the Court is whether the decision of the Colorado Court of Appeals rejecting Mr. Duran's constitutional claim that his right to

present a defense was violated is contrary to or an unreasonable application of clearly established federal law.

It was clearly established when Mr. Duran was convicted that, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted).  Of course,

> [w]hile the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

*Holmes v. South Carolina*, 547 U.S. 319, 326 (2006); *see also Crane*, 476 U.S. at 689-90 (stating that "the Constitution leaves to the judges who must make these decisions 'wide latitude' to exclude evidence that is 'repetitive . . ., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'").

Ultimately, "to establish a violation of the right to compulsory process, a fair trial or due process, a defendant must show a denial of fundamental fairness." *Richmond*, 122 F.3d at 872.  It bears noting that the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990).  Furthermore, "because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint." *Duckett v.*

14

*Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted).  The

Court's "[i]nquiry into fundamental fairness requires examination of the entire

proceedings."  *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam).

In determining whether Mr. Duran can demonstrate a denial of fundamental

fairness in the specific context of his claim that his constitutional right to present witness

testimony was violated, the Court

> first examine[s] whether that testimony was relevant, and if so, whether
> the state's interests in excluding the evidence outweighed Mr. [Duran's]
> interests in its admittance.  This inquiry includes an examination as to
> whether more traditional factors such as prejudice, issue and jury con-
> fusion weigh in favor of excluding the testimony.  Second, [the Court]
> examine[s] whether the excluded testimony was material – whether it
> was of such an exculpatory nature that its exclusion affected the trial's
> outcome.

*Richmond*, 122 F.3d at 872.

The Colorado Court of Appeals applied this clearly established federal law in

addressing Mr. Duran's claim that he was denied the opportunity to present defense

witness testimony.  (See Doc. # 16-13 at 12.)  More specifically, the Colorado Court of

Appeals cited a Colorado Supreme Court case, *People v. Chastain*, 733 P.2d 1206

(Colo. 1987), that in turn relied on federal constitutional standards established by the

United States Supreme Court.  *See Chastain*, 733 P.2d at 1212 (quoting *United States*

*v. Valenzuela-Bernal*, 458 U.S. 858 (1982) for the proposition that a defendant cannot

establish a violation of either his constitutional right to compulsory process or due

process "unless he can make a 'plausible showing of how [the] testimony would have

been both material and favorable to his defense.'").  In applying this clearly established

15

federal law, the Colorado Court of Appeals determined that Mr. Duran's constitutional

right to present a defense was not violated because, consistent with trial court's

findings, the evidence in question was not material.

> The trial court made extensive findings demonstrating that [Ms. King's]
> testimony was not material.  The defense theory of the case was that
> although Duran was present, he was a mere bystander with respect to
> the assault and theft.  However, because testimony had already been
> admitted indicating that [Ms. King] was not able to identify Duran either as
> a bystander or as the person actively assaulting [the victim], the probative
> value of the proposed testimony was low.  Moreover, though the testimony
> regarding clothing and the liquor bottle may have had some impeachment
> value, the absence of this testimony was not of such import as to justify a
> mistrial.

(Doc. # 16-13 at 15.)

Mr. Duran does not argue that the decision of the Colorado Court of Appeals is

contrary to clearly established federal law.  That is, he does not argue that the Colorado

Court of Appeals applied a rule that contradicts the governing law set forth in Supreme

Court cases or that the Colorado Court of Appeals confronted a set of facts materially

indistinguishable from a decision of the Supreme Court and nevertheless arrived at a

result different from the Supreme Court precedent.  *See House*, 527 F.3d at 1018.

Mr. Duran also fails to demonstrate that the decision of the Colorado Court of

Appeals was an unreasonable application of clearly established federal law.  There is no

dispute that Ms. King's testimony would have been relevant.  Therefore, the Court must

focus on whether Ms. King's testimony was material and whether the determination by

the state courts that Ms. King's testimony was not material is objectively unreasonable.

To reiterate, evidence is material if it was of such an exculpatory nature that its

16

exclusion affected the trial's outcome.  *See Richmond*, 122 F.3d at 872.

Mr. Duran argues in the Traverse that Ms. King's testimony was material and would have changed the outcome of the trial because she observed the victim being assaulted from a distance of five feet and she heard statements made by the victim regarding a $100.00 bill that was found on the ground after the assault.  However, Mr. Duran does not dispute, as the state courts determined, that Ms. King could not identify whether Mr. Duran was the man she observed assaulting the victim or the bystander who was not actively participating in the assault.  By contrast, the victim did identify Mr. Duran as the man who assaulted and robbed her and the victim's photo identification card was found by police later that day in Mr. Duran's bathroom in the house he shared with his mother.  In light of this evidence, and based on the Court's review of the entire state court record, the Court finds that the decision by the Colorado Court of Appeals that Ms. King's testimony was not material, i.e., that it would not have affected the outcome of the trial, is not an unreasonable application of clearly established federal law.  In short, Mr. Duran fails to demonstrate that "most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."  *Maynard*, 468 F.3d at 671.  Therefore, the Court finds that Mr. Duran also is not entitled to relief with respect to claim 3.

## IV. **CONCLUSION**

In summary, the Court finds that Mr. Duran is not entitled to relief on his

remaining claims.  Accordingly,

IT IS ORDERED that the amended Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (Doc. # 9) is DENIED and this case is DISMISSED WITH

PREJUDICE.

IT IS FURTHER ORDERED that there is no basis on which to issue a certificate

of appealability pursuant to 28 U.S.C. § 2253(c).

DATED December 11, 2012.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge